HELIKER *v.* HELIKER.

1. WASTE — EQUITY — ACTION AT LAW — ADEQUATE REMEDY — STATUTES—INJUNCTION.

The objection that the complainant, in an action to restrain waste, should be relegated to his action at law, under 3 Comp. Laws, § 11116 *et seq.* (5 How. Stat. [2d Ed.] § 13300 *et seq.*) is not sustainable since the act does not deprive a court of chancery of its jurisdiction to enjoin such injury to demised premises.

2. SAME—TENANT FOR LIFE—LOGS AND LOGGING—RIGHT TO CUT TIMBER—WILLS.

Under a demise by testatrix of real property "to have and to hold, and use and control, as he thinks proper, for his benefit during his natural life," the life tenant was not entitled to sell or remove timber from the property and was subject to be restrained at the instance of the remainderman, where the evidence established that the timber was not to be used for improvement and betterment of the property which defendant occupied.[1]

3. SAME—IMPEACHMENT OF WASTE.

Such devise was not without impeachment of waste, and conveyed merely the entire use, income and profit of the lands during the lifetime of the defendant in the usual and ordinary manner in which such premises are used and occupied.[2]

4. AMENDMENT—EQUITY—PRACTICE.

An amendment of an injunction bill to meet testimony introduced at the hearing showing that waste had already been committed, and praying for an accounting, rests within the discretion of the trial court.

Appeal from Oakland; Smith, J. Submitted October 13, 1914. (Docket No. 81.) Decided March 18, 1915.

---

[1] Upon the question as to whether the cutting of timber is waste which may be enjoined, see note in 43 L. R. A. (N. S.) 262.

[2] As to the impeachment of a life tenant for waste in cutting timber, see note in 37 L. R. A. (N. S.) 772.

184 Mich.—42.

Bill by Carl B. Heliker against Merlin B. Heliker to enjoin waste. From a decree for complainant, defendant appeals. Affirmed.

*Andrew L. Moore,* for complainant.

*William C. Gottman,* for defendant.

McALVAY, J. The parties to this suit are the sons of Rosamond E. Heliker, deceased, late of the township of Farmington, Oakland county, Mich., who, during her lifetime, held the title in fee to the following described land situated in said township and county, to wit, 42 acres of land off the east side of the west one-half of the northeast quarter of section No. 15. By her last will and testament she made the following disposition of this property (omitting the formal parts):

"(1) I give, devise and bequeath to my beloved son, Merlin Heliker, for and during the term of his natural life, the entire use, income and profit of the following described real estate: (Giving the above description.)

"(2) On the death of the said Merlin Heliker I give, devise and bequeath the last above described property to my beloved son, Charles Heliker."

The foregoing was the only property disposed of by the will of the deceased mother. The record shows it was admitted upon the hearing that the testatrix died, that her will was duly admitted to probate, that the estate was probated, and this real estate was assigned according to the terms of the will.

The complainant, Charles E. Heliker, is the remainderman mentioned in said will who files the bill of complaint in this cause against defendant, his brother, in possession of the property described as the life tenant, who had sold the timber standing and being upon said premises to Bert Simpson, a lumberman who owned a sawmill in that vicinity, with permission to enter upon the premises, cut and remove

said timber, and who in accordance with such agreement had entered upon the premises and cut into sawlogs and already removed certain of the best trees standing thereon, and was proceeding to cut more. The bill alleges these facts, and charges that the cutting and removing of said timber constitutes a waste and a loss and irreparable injury to the inheritance and great damage to complainant, and prays for an injunction to prevent the same. A preliminary injunction issued upon filing the bill of complaint. Defendant answered, denying the commission of waste and that complainant is entitled to any relief. Issue was joined upon these pleadings, and the case was heard upon proofs taken in open court. During the hearing it appeared that some of the sawlogs had already been removed by Mr. Simpson and manufactured into lumber. Complainant then asked for leave to amend his bill of complaint and asked for an accounting of waste already committed, which was granted. After the hearing, the court granted the complainant a decree according to the prayer of the bill and permanently enjoined defendant from committing further waste upon said premises, and also for the recovery of $36.34, the undisputed amount of the waste already committed.

The record in the case is a short one, and the facts are not disputed. The defendant by his counsel upon the hearing stated that he did not desire to introduce any proofs and that the question involved in the case was one of law. He said:

"We claim under the terms of the will that the words in the will, 'for and during the term of his natural life the entire use, income and profit of the following described real estate (describing it),' means without impeachment for waste.

"*The Court:* It is a legal proposition based upon the language of the will.

"*Mr. Gottman* (counsel for defendant): Yes, and

we propose to stand or fall upon the proposition, and that is the only question we shall raise."

Thirty acres of the premises in question was cleared farming land. The remainder of about 12 acres was covered with second-growth timber, through which was scattered considerable merchantable saw timber, which was being taken off by Mr. Simpson. No portion of this 12 acres had ever been cultivated. There were no buildings upon the land, and the timber was not cut and removed for the purpose of maintaining fences. Mr. Simpson bought it standing, at so much per thousand, agreeing to pay for it according to the scale. The four trees which he had already cut and removed were of considerable size, measuring at the butts from 28 inches to 33 inches, respectively, and averaged 18 inches at the top. The three oak trees were cut into eight logs which scaled 1,679 feet, an average of over 200 feet to the log. The elm tree was cut into three logs, scaling 650 feet, amounting altogether, at the price agreed upon, to $36.34. The intention on the part of the purchaser was to cut and remove all of the merchantable timber.

The case, upon the admission of defendant, presents but one question, and that is the construction of the following language of the will which created the life estate:

"I give, devise and bequeath to my beloved son, Merlin Heliker, for and during the term of his natural life, the entire use, income and profit of the following described real estate."

Counsel for appellant, although not demurring to the bill, but answering and joining issue, urges that complainant has a complete and adequate remedy at law. This contention is probably based upon the fact that an action to recover for waste may be maintained under our statute. Of this statute this court upon the question has held:

"This statute giving a right of action in courts of law for waste does not, however, deprive the court of chancery of jurisdiction in proceedings to restrain * * * waste." *Duncombe* v. *Felt*, 81 Mich. 332, 338 (45 N. W. 1004, 1006).

Counsel relies upon two Michigan cases to support his main contention that the life estate created in appellant by the will was "without impeachment for waste." *Stevens* v. *Rose*, 69 Mich. 259 (37 N. W. 205), and *Duncombe* v. *Felt*, 81 Mich. 332 (45 N. W. 1004). The first was an action for waste brought under the statute against a tenant under a life lease which was created by the following words:

"To have and to hold, to use and control, as he thinks proper, for his benefit during his natural life."

The second was a case in chancery where the bill was filed to restrain the cutting and removal of timber and the commission of waste under a life lease, where the lessees, husband and wife, had deeded the land to their son, who gave them the lease, which in terms states:

"This lease being given in consideration of the second parties, having conveyed the premises herein described to the first party. * * * And it is expressly understood that the second parties are to have as full and complete control of said premises, while they or either of them shall live, as though such conveyance had not been made."

In *Stevens* v. *Rose, supra,* the language construed as a leasing "without impeachment for waste," "to have and to hold, to use and control as he thinks proper for his benefit during his natural life," is more far-reaching and inclusive than "during the term of his natural life, the entire use, income and profit of the following described real estate," which appear in Mrs. Heliker's will. The terms of the lease in *Duncombe* v. *Felt, supra,* gave to the life tenants as "full and complete control of said premises as

though such conveyance had not been made." Notwithstanding the liberal language creating this life lease, this court, recognizing that it did not include the fee, distinctly held that the life tenant has no right to destroy the inheritance, saying:

"He cannot pull down the buildings or destroy them, or cut and destroy fruit trees, or those planted for ornament and shelter; neither can he be permitted to entirely strip the land of all timber, and convert it into lumber, and sell it away from the inheritance. It is not claimed that the timber is being used for betterments on the premises, but it is admitted that the life tenant is selling it for his own gain and profit."

In the instant case the trial court found:

"The cutting of the timber was clearly only for profit with the claim of right to cut all of it fit for sawing for the same purpose."

Our construction of the language in the instant case is that the words "the entire use, income and profit" gave only the entire use, income, and profit of the premises during the lifetime of defendant ordinarily arising from the ordinary and usual manner in which such premises are used and occupied, and it cannot be construed as "without impeachment of waste."

The bill of complaint set forth a cause of action clearly within the jurisdiction of a court in equity, and complainant has proved a case of active and positive destruction of the inheritance. As to the objection to the amendment to the bill allowed by the court, it is admitted by the appellant that, under the weight of authority, the matter is discretionary with the court.

The decree of the circuit court is affirmed, with costs in favor of complainant.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.