[Decided June 29, 1893.]

## ALLEN v. DUNLAP.

[S. C. 33 Pac. Rep. 675.]

1. MINING CLAIM — INJUNCTION — TRESPASS AND WASTE.— To the general rule that equity will not grant an injunction in cases of trespass, there is an established exception in favor of mines, where injunctions will be granted to prevent the substance of the estate from being injured or carried away; and such a suit may be maintained by one in possession as a locator, under Rev. Stat. U. S. §§ 2319–2325, without first establishing, or attempting to establish, his title at law.

| 24 | 229 |
| 28 | 145 |
| 24 | 229 |
| 37 | 157 |
| 37 | 250 |
| 24 | 229 |
| 39 | 17 |
| 24 | 229 |
| 41 | 436 |
| 24 | 229 |
| e43 | 248 |
| d43 | 252 |
| 24 | 229 |
| 45 | 130 |

2. MINES — NOTICE OF LOCATION.— Posting a notice of location at the discovery shaft of a mine, and marking the boundaries of the claim by blazing the trees, squaring stumps, and driving stakes, is a sufficient compliance with the Rev. Stat. U. S. § 2324, providing that the location must be distinctly marked on the ground so that its boundaries can be readily traced.

3. MINING CLAIM — NOTICE OF LOCATION.—A notice of location of a mining claim alleging the location of one thousand five hundred linear feet, commencing at the notice, and running seven hundred and fifty feet in a southwesterly direction, and seven hundred and fifty feet in a northeasterly direction, with three hundred feet on each side, is not open to the construction of being seven hundred and fifty feet in one direction, and then back to the starting point.

Grant County: JAS. A. FEE, Judge.

This is a suit in equity by Edward C. Allen against James Dunlap to enjoin a trespass upon and waste of a quartz ledge, in a mining claim called the Black Butte lode or ledge, which plaintiffs claim to own by right of possession and location. Substantially the defense is, that neither the plaintiffs, nor their grantors, made any discovery of valuable mineral-bearing quartz in any ledge upon their pretended location of such mining claim, nor ever distinctly marked the boundaries of their pretended location of such mining claim, so that they could be readily traced and known, nor performed the requisite one hundred dollars' worth of work during each of the years from their pretended location of such mining claim to the commencement of this suit. The defendants then allege that they located a mining claim upon a vein or lode of gold-bearing quartz called the Hard Scrabble mine, which is situated on or near the Dunlap mine, and that they have fully complied in all things with the requirements of the law in the location of such mining claim, and that, at the time of the bringing of this suit, they were in possession of the same and engaged in working it. The defendants then allege that in 1885 they and others located a placer mine which was called the Dunlap mine, and that, at the time of the com-

mencement of this suit, they were lawfully in the posses-
sion of it, and that the pretended Black Butte ledge
mining claim, or the greater part thereof, namely, the west
end thereof, is sought to be located on the prior location of
the Dunlap mine; that the distance which the plaintiffs
claim the Black Butte ledge to extend upon the Dunlap
mine is unknown to the defendants for the reason that the
location of the Black Butte ledge has never been marked
on the ground so that its boundaries could be readily
traced; that the location, as claimed by the plaintiffs, of
the greater portion of the Black Butte ledge is on the loca-
tion of the Hard Scrabble mine, but what proportion
of the Black Butte ledge extends upon the Hard Scrab-
ble mine is unknown to these defendants for the reason
that the location of the Black Butte ledge has never been
marked upon the ground so that its boundaries could be
readily traced; that the plaintiffs are now claiming to be
working the Black Butte ledge by sinking shafts, running
cuts and tunnels, taking out ore, etc., all within the
boundaries of the Hard Scrabble mine, and that neither
of the plaintiffs own any interest in the Hard Scrabble
mine, nor have they ever obtained any authority from
these defendants to enter upon it. All the material alle-
gations in the answer were denied in the reply and new
matter set up by way of estoppel, to which we need not
refer. The cause was referred to a referee, whose findings
of fact and conclusions of law were in favor of the plain-
tiffs, from which the defendants have brought this appeal.
Affirmed.

*J. N. Brown,* and *D'Arcy & Bingham,* for Appellants.

1. The general rule is that a court of equity takes no
jurisdiction in cases of mere trespass, not even in granting
a temporary injunction. There is an established excep-
tion, however, in the cases of mines, timber, and the like,
in which injunction will be granted to restrain the con-

tinued commission of acts by which the substance of the estate is destroyed or carried off, but when the plaintiff seeking an injunction in such cases claims to be the legal owner of the property he must show that he has established his title by the judgment of a court of law, or that he is prosecuting his suit at law and that the injury will be irreparable before he can obtain judgment, and in the latter case the court in continuing the injunction must make such order as will insure the speedy determination of the suit at law: *Irwin* v. *Davidson,* 3 Ired. Eq. N. Car. 311; *Lyon* v. *Wood,* 3 Leg. Gaz. 81; *Magnet Min. Co.* v. *Page,* 9 Nev. 348; *Lady Byron Min. Co.* v. *Lady Byron,* 4 Nev. 415; *Johnson* v. *Wide West Min. Co.* 22 Cal. 479; *Stevens* v. *Williams,* 5 Min. Rep. 449.

2.   In Section 2324, revised statutes of the United States, we find the following: "The location must be distinctly marked on the ground so that its boundaries can be readily traced." "All records of mining claims hereafter made shall contain the name or names of the locaters, the date of the location and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim.   Under that section the location of a mining claim must be distinctly marked on the ground so that its boundaries can be readily traced: *Hanswirth* v. *Butcher,* 4 Mont. 307; *Hess* v. *Winder,* 30 Cal. 349, 354; *Holland and Tiley* v. *Mount Auborn Min. Co.,* 53 Cal. 149, 217; *Newbill* v. *Thurston,* 65 Cal. 613; *Duprat* v. *James,* 65 Cal. 555; *Taylor* v. *Middleton,* 67 Cal. 656; *Anthony* v. *Jilson,* 83 Cal. 396; *Gono* v. *Russel,* 3 Mont. 358, 363; *Darger* v. *Le Siener,* 30 Pac. Rep. 363.

*Parrish & Cozard,* and *Bailey & Balleray,* for Respondents.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

1.   The first objection raised is as to the jurisdiction of equity to grant relief in cases of trespass and waste.   The

general rule that a court of equity will refuse to take juris-
diction and award even a temporary injunction in cases of
a mere trespass, is conceded; but there is an established
exception in cases of mines, timber, and the like, in which
an injunction will be granted to restrain the commission
of acts by which the substance of an estate is injured,
destroyed, or carried away.    In such case, the injury being
irreparable, or difficult of ascertainment in damages, the
remedy at law is inadequate.    The defendants are not
claiming that the remedy at law for the alleged trespasses
committed and threatened is adequate, if the title or right
of possession to the mining claim is in the plaintiffs.    It is
substantially conceded that, if such is the case, the injury
is irreparable and the remedy at law inadequate.    The
contention of the defendants is that the title or right of
possession of the plaintiffs to the mining claim is denied
and contested, and that they must first establish such title
or right by a judgment at law in ejectment, or for the
recovery of its possession before a justice's court.    This con-
tention is manifestly grounded on the assumption that the
plaintiffs are not in possession of the mining claim in
question, and that the defendants are withholding its pos-
session from them.    All the cases cited and relied upon by
the defendants are those in which title was involved.    But
there is no issue of title here by the pleadings or the facts,
other than the possessory title acquired by location and
possession.    Under the statutes of the United States all
valuable mineral deposits in land belonging to it are free
and open to exploration, occupation, and purchase by its
citizens, under the regulations prescribed therein, and by
the local customs and laws of miners in the several mining
districts so far as they are not inconsistent with the laws
of the United States:   Rev. Stat. U. S. §§ 2319, 2325.   They
provide the mode to be pursued in the location of such
lands, and that the locators are granted the exclusive right
of possession and enjoyment of the surface included within

the boundaries of their location. The lands thus located are called mining claims, and the locators are spoken of as owners antecedent to the entry of the government patent. In explaining the nature of these rights, Mr. Justice BREWER said: "The statutes of the United States provide that upon performance of certain conditions, the discoverer of a mine becomes entitled to a patent. If all these conditions have been performed, the full equitable title is vested in the discoverer, and all that the government retains is the naked legal title, in trust for the equitable owner. If only partially performed, he has an absolute right of possession, and an inchoate title, which further performance will perfect and complete": *Aspen Smelting Co.* v. *Rucker*, 28 Fed. Rep. 221. Such a right of possession, or possessory title, is valuable and protected by law, but it is not declared by the statutes of this state to be real estate title.

The plaintiffs in their complaint claim the right to mine the Black Butte lode as owners thereof by virtue of location and possession, and set forth the particular facts upon which they rely to support their right. They then aver that while in the possession of the mine, and engaged in developing it, the defendants entered upon it with picks and shovels, and commenced to work thereon by proceeding to dig and uncover the ledge with intent to remove the mineral therefrom, and threatened to continue to dig and appropriate the valuable minerals of the mine to their own use, and to permanently deprive the plaintiffs of it; that they are insolvent; and that unless the defendants be restrained, the plaintiffs will suffer great and irreparable loss and injury. The Code provides that a justice's court has jurisdiction of an action at law to recover the possession of a mining claim, and that the complaint must set forth the facts constituting the plaintiff's right of possession, with such description of the mining claim as will be sufficient to identify it: Hill's Code, § 2175, *et seq.* By

this provision a remedy is afforded at law to determine
the right of possession, or the possessory title to a mining
claim.    But the facts indisputably show that plaintiffs are
in possession of the mining claim.    They are not seeking
to recover it, but to protect it from the threatened waste
and trespass which would despoil the mine of its valuable
ore, and affect its substance.    To defeat the plaintiffs'
right of possession, and to establish their own, the defend-
ants set up facts designed to show that the plaintiffs have
not such right of possession, owing to defects in their
location, and their failure to do the annual assessment
work, and further set up their own location of the Dunlap
and Hard Scrabble mines, a part of which is alleged to
cover the mining claim in dispute.    The defendants claim
the right by location to do the acts alleged to be trespass
and waste, and which affect the substance of the mining
claim, and they insist that the plaintiffs shall establish
their right of possession to the mining claim by judgment
for its recovery before an injunction will issue, when the
facts show that the plaintiffs are already in possession of
it, and that the injury to it is irremediable at law.    It is
the defendants who are in a position to bring an action at
law in a justice's court for the recovery of the mine, and
to determine whether the right of possession is in the
plaintiffs or themselves.    It is the proper remedy for the
defendants, if they wish to determine the possessory title.
The plaintiffs cannot resort to it as they are in possession.
The facts alleged show that the acts of trespass committed
and threatened to be continued affect the substance of the
mine and will cause irreparable injury unless restrained.
It is said that the working of mines is something more
than the common ordinary use of real estate, and requires
the use of more than ordinary remedies to protect the
rights of parties entitled to the possession: 15 Am. & Eng.
Enc. 605.    In aid of the action of trespass or waste, the
foundation of the jurisdiction of a court of equity is in the

probability of irreparable injury, and multiplicity of suits. In our judgment not alone the facts alleged, but the facts proven, show the case is a proper one for the jurisdiction of equity to award an injunction.

2. It is next claimed that there was no valid location of the Black Butte mining claim, for the following reasons: *First,* it is argued that there must be a discovery of a mineral-bearing ledge before there can be a location, and that the evidence is insufficient to show that the plaintiffs or their grantors discovered such a vein or lode. We think the evidence shows that prior to the location of the mine, the predecessors in interest of the plaintiffs discovered a ledge or lode of gold-bearing rock or quartz where the Black Butte mine is now situated, and that it is valuable, and probably capable of yielding large returns. The development so far, according to the testimony of several witnesses, indicates that there is a large body of ore, which being greatly decomposed, is easily worked, and is rich in gold. Of course mining property at this state of development is speculative in its character, and its value cannot be calculated with any degree of certainty, as the value of the ore beyond the point of development cannot be ascertained, but the indications are that the lode is rich in gold-bearing quartz. *Second,* it is claimed that there is nothing in the evidence to show that the plaintiffs or their predecessors in interest ever marked off the location of the Black Butte mining claim so that its boundaries could be readily traced. Section 2324, Rev. Stat. U. S. provides that "The location must be distinctly marked on the ground, so that its boundaries can be readily traced." The court below, in adopting the report of the referee, found that the boundaries of the Black Butte mine were well defined by blazed trees, stakes, and stumps of small trees,—the tops of the trees being cut off from four to six feet above ground, and the stumps squared, and that they can be readily traced. We think there was abundant evi-

dence to sustain the finding of the court on this point. The evidence shows that the Black Butte mine or lode of gold-bearing quartz was discovered by Dudley Curl in the spring of 1886; that he took as a partner one A. P. Lamb, and that they located the Black Butte mine by posting a notice of the location at the discovery shaft, and marked the boundaries of the claim by artificial monuments sufficient to give notice to any person of its boundaries. It also appears, especially from the early part of 1889, that the artificial monuments which marked the boundaries of the location of the mine are plain and visible, and are of a permanent character.

3. It is contended that the notice of location is defective and insufficient. The evidence shows that the notice which was posted at the discovery shaft and recorded in the records of Grant County, was as follows: "Notice is hereby given that the undersigned having complied, etc., has located one thousand five hundred linear feet on the Black Butte lode or ledge, situated in Fox Valley mining district, Grant County, Oregon, described as follows: Commencing at this notice and running seven hundred and fifty feet in a southwesterly direction, and seven hundred and fifty feet in a northeasterly direction; also claim three hundred feet on each side with all dips, spurs, and angles. This ledge or lode is situated on the Dud Curl and A. P. Lamb placer claim, situated at the head of Rich. Gulch, just above John Harper & Co.'s placer claim." It is contended that this description would simply go seven hundred and fifty feet in a certain direction and back to the starting point, but this is not so. It is seven hundred and fifty feet from the notice in a southwesterly direction, and seven hundred and fifty feet from the notice in a northeasterly direction, which makes one thousand five hundred linear feet. The evidence also shows that there was no regular organized mining district in which the Black Butte mine is situated, and consequently it is not

subject to any local laws or regulations, but the rights of plaintiffs are governed entirely by the statutes of the United States.   Section 2324, Revised Statutes of the United States, does not require notice of a mining claim to to be either posted or recorded, but entrusts that matter to local regulation, subject to the condition that when a notice is required to be recorded, it shall contain, among other things, a description of the property; ( *Carter* v. *Bacigalupi*, 83 Cal. 187;) so that there is no possible ground upon which to predicate the idea that the boundaries of the Black Butte mining claim are not described and marked off so that they can be readily ascertained and traced.

It is lastly alleged that the requirement of the statute that one hundred dollars in value of work and improvement to be done and made on the lode in each year has not been complied with.   There was but slight reference to this point at the argument.   We think, however, the testimony of Curl, Oak, Brown, and Allen shows that the plaintiffs and their predecessors in interest have performed work, and made improvements which are of the required value.   We think that it is established that the Black Butte lode has been continuously worked by the plaintiffs and their predecessors in interest since its discovery, and that from the year 1889 the plaintiffs continued to develop it by expending much labor, time, and material.

As these were the only points relied upon, it results from these considerations that the decree must be AFFIRMED.